5 cases to be submitted today on oral argument. I expect that we'll hear the first three and then take a brief recess before finishing for the day. And we begin with State of Louisiana v. United States. And I will ask you to pronounce your name for us because I'll probably mess it up. Fine. We're ready for you, Mr. Cook. Thank you. May it please the court. We represent a landowner in the state of Louisiana. This is an action for equitable relief bought by that landowner under the Administrative Practice Act, exception to sovereign immunity, under the provisions of the River and Harbor Act, particularly Section 426I, to protect the shoreline that exists with the Gulf Intercoastal Waterway that passes through it. This is not a claim for damages. It's a claim for equitable relief. It's not a programmatic challenge. It is simply a cry for relief for this particular property. And most importantly, it's not a contract case. It is a claim to enforce the Your Honor, what happened is perhaps understandable. The case was originally reviewed by a magistrate judge. Judge Davis will remember this. We had a period of time in southwest Louisiana when we didn't have any Article III judges for a while. And that court made a determination based on its review of the record that I think we could all admit was fundamentally flawed given what happened in Weyerhaeuser, the Dusky Frog case. In particular, it conducted a search to find out if there was some exception to the law that would allow a claim like this to go forward as opposed to presuming that under the statute there was a right absent some prohibition. When the case was reviewed by Judge Juneau, he went through a similar review of the report, and he arrived at a conclusion that with all deference to him on page 23 of the record before you, I think that you can read and see is fundamentally either in error, which we believe it to be, or a misunderstanding as to what is being asked for. And I have tried to strain to figure out how we got to that, and I'll try and get through it. But he makes this decision. He says, because this is a contract case, it doesn't belong here and you lack jurisdiction. This is not a contract case. This is a case for statutory enforcement. As this Court is aware, the claims for under the Administrative Practice Act are to be brought in federal court. Sovereign immunity is specifically waived absent something in the statute that says it's not. There is nothing in the Rivers and Harbors Act that says it is not. Let's talk about what you have to show under 702. Sure. And I think Lujan is the controlling authority. So the case, Justice Scalia's case, and he said, first he said 704 doesn't apply because there's no express authorization for the claim here. And then he turned to what's required under 702, and it says the party seeking review under 702 must show that he's suffered a wrong because he's challenged agency that's adversely affected or aggrieved. Then he went on to say that to show that, you've got to show that it was within the zone of interest sought to be protected by the statute. And then later, he said, assuming that the plaintiff here had shown that he was aggrieved, that still the plaintiff must show some discreet final agency action in order to come under 702. Now, how do you get around that? Well, let me start with the easy part, and then I'll get to the harder one if you don't mind. Under the first part, the zone of interest, obviously, the Rivers and Harbors Act, when you look at Section 426I of the Rivers and Harbors Act, where it talks about the duty of the Corps to protect the shoreline, and that's there. Where are you talking about that? Under the Rivers and Harbors Act, sir. 526 or? 426I. 426, okay. There's also the provision that— But let's talk about 426. Sure. Now, as I read that, what it says is when the Corps has abandoned a stream or a body of water, then the real property can be returned—the servitude or the easement that's obtained can be returned then to the original owner. It doesn't talk about the duty to maintain. With all deference, sir, my recollection is it says specifically that the Corps is directed to maintain. It is to plan to—and I'll look it up as we're going forward. If you don't mind, I can do two things, perhaps, at once, but probably not well on either. But it does require the Corps to have the Chief to plan and implement and protect the shoreline. It's a relatively new statute. But it says if a non-federal public body agrees to operate and maintain some of the measures, that's the condition. And there we get into the nuance of the particular paragraph. And what we perceive, sir, is that in that paragraph, it's illustrative of the fact that the Corps and this whole purpose of the Rivers and Harbors Act is to protect the shoreline. It is to protect the property owners that are adjacent to it. And it points out, when you get into that statute, and you've obviously read it, you'll see where they also talk about returning it to the—that's exactly what you're talking about. That's that whole weighing of interest. The Corps only has so much interest in the property. What has happened here is that they have abandoned any interest in protecting the property. In the case of our property, in these—in the complaint, you've seen it, they're way outside. They're 600 feet outside of it. They've taken our property. It seems you're basically complaining about decades of inaction, about the failure to prevent this erosion over decades. What is the discrete agency action you can identify that you're challenging? Their failure to honor their agreement that they would only have that one easement. And that's been going on for decades. So there's not a discrete point in time when this action occurred. It happens today. And every day is a discrete action. And I know that sounds like sophistry and I don't mean it to be that way. But the discrete action—and I don't—and perhaps that's where I am failing to communicate and for which I apologize. But the discrete action is that the Corps of Engineers has an absolute no-action policy. There is—and perhaps we should get into the weeds and have the right to do that discovery. But where we are here is on a motion to dismiss based on the pleadings. You're saying it's the statute provides the limits of the width of the waterway. Yes, sir. And I think you said it was 100 feet, then it went to 125. Correct, by specific statute. But the easement says it can be 300 feet. So you're already—under the easement, you're way beyond what you think the statute requires. So I guess I don't see why the statute has any role when you're almost three times beyond that. And so like the district court said, then it's really all about this easement, which is a contract issue which can be litigated in Washington, D.C. Except it can't, because you can't get the relief under that statute. What relief would I get in D.C.? You can get damages in the court of claims that can then pay to do whatever work you need to do to fix this problem. Well, were it that easy—and to be candid, what we're saying is the Corps has an obligation under the law that Judge Davis and I have been going around about, and with the Court's permission, I will supplement the record and write a very simple letter pointing to you that provision that I think is pertinent. But the statute says that they are to protect the shoreline. The statute says nothing about there being sovereign immunity from an equitable claim for relief in it. And under Weyerhaeuser, absent such a prohibition against the shoreline, against a claim, then the presumption is that the claim ought to go forward. I may well die down below because I don't prove all the facts up. But the basis of the pleadings are these. We have brought a claim under 702. We have alleged that a statutory deficiency exists under the Rivers and Harbors Act. And under the law, we're entitled to go forward on that basis. It should not be that—or there is nothing in the law that says we can't go forward on that basis. They may come in with a summary judgment and say, to your point, well, it's not—it's 300 feet or it's 100 feet. All of that's fine, and that's down the road. But we're entitled to our day in court to say, you have not followed the statute. We want equitable relief. We don't want to go through the myriad problems of damages and the relief. Because what is the state in this case—and I keep coming back to the state as a private property owner because I don't want to get caught up on the programmatic challenge, because that's not what this is. What does the state want? It wants the shoreline that it agreed to to be put in place. The injunction you would want would say, you've got to bring the shoreline back to 300 feet. Simple as that. Well, you know, in Lujan, the issue was whether—well, the plaintiff was complaining about the Bureau of Land Management turning over land back to public use— Yes, sir. —or rather to private use. And so the court said, look, we can't review a decision that's turned over land back to private use. You've got to show us a discreet action that you complained about. We can't review what the agency did over a decade. We're not asking—and that's where I guess I'm getting hung up. We're not asking for a review of agency action. What we're saying is we're asking for—let us go out and prove that they have violated the law, not through action or inaction, because that's the first half of 702. This is under the second one, which is if I can prove a statutory violation and I'm entitled to equitable relief, that's what I want. In Lujan—and you're absolutely right. They said, well, this private guy, this private guy, you can't come in after all of that and challenge it. That's not our challenge. Our law says that you were going to construct this in this certain way. It was going to be maintained in that certain way. And all we're saying—and so when you read our complaints, you'll see pages of discussion about the servitude regime in Louisiana and the dominant servitudes and the like. But that's all descriptive to get into the Lujan exceptions, to deal with Lujan, to prove that we're part of the zone of interest, because it's not appropriate to say under any—well, look, a government agency has decided to violate your rights. Therefore, if you don't like it, just go sue and get damages. When there is an opportunity and a responsibility on their part to go ahead and say, that's it, we're going to put it back, we're going to you will follow the law. Now, I have a burden of proof when we go back down, should you allow us that opportunity, of demonstrating to that court that they have violated the law, what the relief needs to be and the like. But to shut us off at the pass and say, well, under these provisions, you're not entitled to go forward, even though 702 provides a right, if I'm challenging a It's not programmatic in its challenge, and it is simple and discreet in what we're asking to do. I looked at your brief. I didn't see where you had argued 426i in the district court. We did not. I want to be up front with you. Now, it's a center—it seems like it's the center place of your case. And with the court's—with apologies to the court, I asked and went over that myself multiple times, and it's because the original court, and that's what I was talking about, was all concerned about the warehouser, pre-warehouser, what was going on and where's the presumptions and the like. And so it was only after the government filed its brief that we realized nobody here is articulating the issue, not us, not the government, not the courts below, and understanding it is a challenge under the statute that 702 has, as you know, two provisions, a gateway A and a gateway B. We have taken gateway B. It is laid out in our brief. Maybe I could have been more artful, but that's no reason to dismiss the claim. Perhaps it's a reason to remand and say, could we get it right and straighten up the pleading when you go back down, because we're supposed to do that, but this is— All right, for the United States, you're also going to need to pronounce your name for me. So I don't— Daniel Helinen, Your Honor. Okay. Come on up to the mic and say that again. All right. Good morning, Your Honor. Daniel Helinen for the United States. Helinen. All right, Mr. Helinen. May it please the Court. We'd ask the Court today to affirm the judgment of the District Court because Louisiana has not met the conditions for establishing a waiver of the United States' sovereign immunity here. The claim that Louisiana is seeking to bring is a challenge to the United States' administration of the Gulf Intercoastal Waterway generally concerning allegations about the width of the waterway, and they argue that we have waived our sovereign immunity in Section 702 of Title V in the Administrative Procedure Act. But the Section 702 waiver applies only where claims are brought in the form of a challenge to final agency action or, in some circumstances, agency action, and they've failed to meet that burden in this case, which is why the District Court concluded that it lacked jurisdiction and why we would ask this Court to affirm. There are just four points that I would like to make for the Court today. The first is about sovereign immunity and this question of burdens and presumptions that apply in this case. Sovereign immunity, of course, goes to the Court's power to hear a case against the United States, and it goes to the jurisdiction of the courts in general, which means that Louisiana, as the plaintiff, bears the burden of establishing a waiver of sovereign immunity. There's no presumption of jurisdiction, no presumption of a waiver. So when Louisiana raises Weyerhaeuser and this question of a presumption of reviewability, that's an entirely separate question that pertains to Section 701A2 of Title V. It's a different statutory provision and doesn't come into play here. So the burden is on Louisiana to prove that there has been a waiver of sovereign immunity that establishes jurisdiction. The second point I would like to raise is just about the cause of action that Louisiana is seeking to bring here. This is relevant to the sovereign immunity determination only to the extent it speaks to whether final agency action is required or agency action in this case. Louisiana is relying on Section 426I of Title 33 to argue that only agency action is required because they're not bringing an APA claim. That statute was introduced for the first time in the reply brief on appeal, and we would argue that any reliance on that statute has been forfeited as a result. Tell us what that statute is designed to do. So Section 426I essentially confers authority on the Secretary of the Army to investigate, study, and authorize projects to address shoreline protection at various projects throughout the country, including the Intracoastal Waterway. But it's essentially a conferral of discretionary authority on the Secretary to investigate means of shoreline protection rather than some grant of affirmative duty to take certain specific discreet actions. But regardless of what the statute provides for, I think it's clear in the text that there's not a private cause of action that Louisiana can sue under. There's also not an implied cause of action, and I don't think Louisiana has cited any recognized implied cause of action there. And that means that their cause of action arises, if at all, only under the APA itself, which means that agency action is required, but also final agency action. And the third point that I wanted to make is just about whether or not they've met that final agency action requirement here. Let me ask you this. In Lujan, they talk about final agency action, but is there a clear case that—I mean, what Justice Scalia said has to be a discreet act. Is that the same thing as final agency action? So agency action in general must be circumscribed and discreet, and the finality requirement speaks to whether the action represents the consummation of the agency's decision-making process and determines rights and obligations. And what's your best case for that? I think that can be seen in the Southern Utah Wilderness Alliance case that speaks to the failure-to-act issue that Louisiana is arguing here. The Norton v. Southern Utah Wilderness Alliance discusses what is required to allege discreet circumscribed agency action in this exact kind of context, where a plaintiff comes to court arguing that an agency is broadly not complying with the law. And I think what the Supreme Court found there is that for a plaintiff to allege that the United States is generally deficient in going about some putative duty to take, you know, to meet some sort of standard is not enough. They have to present a focused locus for the court's judicial review through the identification of a circumscribed discreet action that the agency failed to take. And I don't think there's anything in the record here in their allegations in the amended complaint that would suggest their challenge is sufficiently specific and focused on a discreet agency action. And so the last point that I wanted to make is just about what that means for Louisiana's allegations and the concerns that they're raising in their complaint. Affirming the district court here wouldn't mean that judicial review is entirely foreclosed. It just recognizes that in order to bring these claims pursuant to the Section 702 waiver that Louisiana chose to rely on, they must satisfy the conditions of the Section 702 waiver or otherwise seek relief pursuant to some other waiver of sovereign immunity, like the Tucker Act, where they could bring a claim for damages in the court of federal claims or if it was for less than $10,000, which I assume it would not be here in federal district court. To the extent Louisiana wants to raise concerns to the court itself, Louisiana is of course a key partner of the court in many projects and we would welcome them to raise their concerns to the court and they're also free to, of course, engage their congressional representatives to seek legislative solutions or appropriations as they see fit. Unless the court has any further questions? All right. Thank you, Mr. Helanian. Thank you very much. Dewey for rebuttal. I feel like two of those barges out on the intercoastal passing in different directions. We're not here challenging whether the court acted or failed to act. That's why the whole question of action by the agency is irrelevant. What did you mean in your opening argument when you said, I wrote it down, they have a no action policy? Nothing is going on out there. There's no discrete action that one can point to. It's not like they've come out there and set up a camp or anything like that. They have taken no steps. They're on our property. It's an easement that was granted. They have gone beyond the bounds of the easement for whatever reason. We think it's because they're not following the dictates of 461, which they're required to maintain the shoreline and they haven't. So the problem is you've got to get around sovereign immunity. I understand. If you do that, you bring in your act, you've got to bring it within the confines of Section 702. That's your whole... Absolutely. You don't get to first base until you do that. You and I are in total agreement on that, at least that far into your opinion. But here's where we disagree perhaps, and I think with all deference, I think I'm correct. The second section of 702 doesn't require, doesn't discuss, doesn't refer to agency action. It is literally set up, as you read it, for this type of complaint. It is where we come in and say, you have violated the law. Not that you've failed to take some step or that you've taken some step pursuant to the law. You're violating it. The whole equitable relief is just honor the law. What's the best case applying that provision the way you're interpreting it? The court allows me to go back, do the discovery that I think will prove that they are outside of the boundaries of it. The judge down there issues an order that says state... Supreme Court, or from our court, what case applies that provision to allow an APA student to go forward the way you're envisioning it to enforce the laws? I think that, I'm going to be candid with the court, I think it requires a reading of warehouses, re-articulated and re-emphasized emphasis that you have a right to go to court and it shouldn't be on the litigant to find the exception in the statute. In fact, if the government says you're not allowed to sue for this, they need to go find the River and Harbor Workers Act, which does not exist. The second part, Your Honor, I'd say is, to Judge Davis' point, is illusion. You got to read it, I think, and it opens this up because we're in the zone of interest. We are affected by it. And then the third is, I want to say burden, but I'm mispronouncing it, is the case that says that in certain instances, we articulated in the brief, that from the Supreme Court that you get injunctive relief, equitable relief. That's what we're seeking. And so when I hear that the state of Louisiana can do this, we can go to the congressman and all that, we're just a property owner. We happen to be the state of Louisiana. And so, as a property owner, we want the people who are on the property off. I know I have a hill, but it's a hill that the law provides me relief. Because what's the other option? I've got to search around here for some non-action, and maybe that's, if you send me back, maybe that's what I've got to do, I disagree. But what are we looking for here? What does Weyerhaeuser really tell us? You can't have a wrong with no remedy. But Weyerhaeuser was brought under 701, which allows you to bring a suit to challenge a discretionary decision that's vested in the secretary. No question. But what it does do is it articulates with finality the Supreme Court's leanings, not leanings, stated, and remember, it comes up basically challenging this court, and its multiple rulings, finding to the opposite, that the presumption against, in favor of the Supreme Court, is not just a question of the Supreme Court's decision, it's a question of the Supreme Court's decision, and you can't go back and argue that you can't make this right. Send this back down, give us that chance. Thank you. Thank you. Your case is under submission.   Thank you. Thank you. Thank you.